1  MAYER BROWN LLP
   JOHN P. ZAIMES (SBN 91933)
2  jzaimes@mayerbrown.com
   EVAN M. WOOTEN (SBN 247340)
3  ewooten@mayerbrown.com
   350 South Grand Avenue, 25th Floor
4  Los Angeles, CA 90071
   Telephone:  (213) 229-9500
5  Facsimile:  (213) 625-0248

6  Attorneys for Plaintiffs
   Jeffrey M. Jonas
7

8               UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10
   JEFFREY M. JONAS,                    Case No. 13-cv-1237 DMS (DHB)
11
                  Plaintiff,            **FIRST AMENDED COMPLAINT
12                                       FOR**
        v.
13                                       **(1) FRAUD**
   SHIRE PHARMACEUTICALS LLC;
14 SHIRE PLC; FLEMMING                   **(2) CONCEALMENT**
   ORNSKOV; ANGUS RUSSELL; and
15 DOES 1 through 100 inclusive,,        **(3) FRAUDULENT INDUCEMENT**

16                Defendants.            **(4) NEGLIGENT
                                          MISREPRESENTATION**
17
                                         **(5) AGE DISCRIMINATION, 29
18                                        U.S.C. § 621 *et seq.* and CAL
                                          GOV'T CODE § 12900 *et seq.***
19
                                         **(6) WRONGFUL CONSTRUCTIVE
20                                        DISCHARGE,**
21
                                         **(7) VIOLATION OF CALIFORNIA
22                                        LABOR CODE § 970 *et seq.***

23                                       **(8) PUNITIVE DAMAGES**

24                                       **[Jury Trial Requested]**

25

26

27

28

---
706653455                               COMPLAINT FOR FRAUD AND DISCRIMINATION

**NATURE OF THE ACTION**

1.     This is an action for damages and injunctive and other relief by Plaintiff Dr. Jeffrey M. Jonas, M.D. ("JONAS") against Defendants Shire Pharmaceuticals, LLC, Shire Plc (collectively "SHIRE"), Flemming Ornskov ("ORNSKOV"), and Angus Russell ("RUSSELL").   JONAS is the former President of SHIRE's Regenerative Medicine ("RM") business.  ORNSKOV is the current CEO of SHIRE, and RUSSELL is the former CEO.

2.     JONAS was asked by SHIRE and RUSSELL to become President of SHIRE's Regenerative Medicine (RM) division in late 2012.  Numerous material representations were made by RUSSELL and other senior managers at SHIRE as to the nature of the new position, the support the position would have at the Board level and the state of the RM business.  At the time, JONAS had comparable opportunities and offers for similar positions at other companies, and JONAS told RUSSELL that.

3.     Shortly after accepting the position of President of RM, JONAS learned that SHIRE planned to appoint a new CEO.  Concerned about the potential implications of that appointment for his new job, JONAS sought and received assurances from RUSSELL and others in SHIRE's senior management that his new position would not be affected by the change in leadership, that the prior representations about the strength of the opportunity for JONAS remained true and that JONAS should not accept a position elsewhere as a result.

4.     In reliance on these assurances, JONAS moved from Philadelphia, Pennsylvania to San Diego, California to assume the Presidency of RM.  Shortly after JONAS assumed that position in early 2013, SHIRE's new CEO, ORNSKOV, began to strip away JONAS' rights and responsibilities.  He did so as part of an express plan to replace current senior managers over 40 with younger employees.  SHIRE thus reneged on its prior promises and methodically reduced JONAS' responsibilities, relegating him to a role inferior to the position he had

been promised, and inferior even to his former role.  SHIRE and ORNSKOV also demeaned JONAS' contributions to the organization, notwithstanding the successes achieved by the RM business while JONAS was its president, as well as Jonas's well-recognized prior successes.

5.     When JONAS voiced his concerns about these and other matters, SHIRE's leadership retaliated by placing him on administrative leave, and he continues in that purgatory as of the filing of this Complaint.  SHIRE and ORNSKOV have published derogatory and baseless comments about the reasons for putting JONAS on leave, including that JONAS had engaged in "disruptive behavior that is harmful to the business."  The situation has become so intolerable as to constitute wrongful constructive discharge.  JONAS has suffered and continues to suffer economic and psychological harm and damages as a result of SHIRE's unlawful actions.

6.     To redress SHIRE's fraudulent, discriminatory and retaliatory actions, JONAS brings this action for: (1) Fraud/Deceit; (2) Concealment; (3) Fraudulent Inducement; (4) Negligent Misrepresentation; (5) Age Discrimination under 29 U.S.C. § 621 *et seq.* (the ADEA) and Cal. Gov't Code § 12900 *et seq.*; (6) Wrongful Constructive Discharge; (7) Violation of California Labor Code section 970 *et seq.*; and (8) Punitive Damages.

### THE PARTIES, JURISDICTION, AND VENUE

7.     JONAS is a citizen of the State of California over 18 years of age and is a resident of San Diego County.  At all times relevant to the Complaint, JONAS was also over the age of 40.

8.     Shire Pharmaceuticals LLC is a limited liability company organized under the laws of Delaware with its principal place of business in Philadelphia, Pennsylvania.  Shire Pharmaceuticals LLC is a wholly-owned subsidiary of Shire plc, a publicly traded corporation registered in the Bailiwick of Jersey (a British Crown Dependency), with its principal place of business and/or nerve center in the

706653455

1   Republic of Ireland.  On information and belief, Shire plc is the sole member of

2   Shire Pharmaceuticals LLC.  Shire Pharmaceuticals LLC is a general agent for and

3   alter ego of Shire plc in the United States and California, and Shire plc operated

4   through Shire Pharmaceuticals LLC in the United States and, inter alia, in

5   California.  ORNSKOV was at all times relevant a resident of the state of

6   Massachusetts.  RUSSELL was at all times relevant a resident of the state of

7   Pennsylvania.  At all times relevant, RUSSELL and ORNSKOV were employees

8   and agents of SHIRE and personally participated in the wrongdoing alleged in this

9   complaint.  SHIRE, RUSSELL, and ORNSKOV are collectively referred to as

10   "DEFENDANTS."

11       9.    Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332

12   because Plaintiff JONAS on the one hand, and all DEFENDANTS, on the other

13   hand, are residents of different states, and the matter in controversy exceeds

14   $75,000 in value.

15       10.   Venue in this district is proper pursuant to 28 U.S.C. § 1391 because

16   JONAS lives and is employed in this district, because substantial portions of the

17   acts and omissions on which the claims here are based occurred in this district,

18   because JONAS would have remained wholly employed in this district but for

19   SHIRE's improper activities, and because SHIRE has conducted and continues to

20   conduct substantial business in this district.

21           **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

22       11.   SHIRE hired JONAS as Senior Vice President of Research and

23   Development ("R&D") in 2007.  JONAS performed his responsibilities as SVP of

24   R&D exceedingly well, and he received annual raises from 2007-2012 to reflect

25   his performance.  After four-plus years at SHIRE, JONAS' skills and abilities had

26   developed to the point where he was a strong candidate for a position as an officer

27   and/or senior executive, either with SHIRE or with other companies.

28

COMPLAINT FOR FRAUD AND DISCRIMINATION

706653455

12.   By November 2012, JONAS had received employment offers and interest from a number of other companies for executive positions.   JONAS approached SHIRE's senior management regarding the possibility of promotion to an officer or equivalent position within SHIRE.  He felt a sense of loyalty toward SHIRE and a desire to build on his four years of work for the company.

13.   JONAS told SHIRE that he very much wanted to take on the responsibilities of a high corporate executive, in particular to run a business, to have full responsibility for the business's profit and loss ("P&L") (and the integrated functions associated with a Business President, including R&D, manufacturing, supply chain, and marketing and sales), and to serve on SHIRE's Executive Leadership Team, which also consists of the CEO, CFO, the General Counsel and the Senior Vice President of Human Resources.

14.   In or about October 2012, JONAS met with SHIRE's CEO, Angus Russell, via videoconference in SHIRE's Philadelphia office.  During the meeting, RUSSELL offered JONAS the position of President of SHIRE's Regenerative Medicine (RM) business.   RUSSELL represented that, as President of RM, JONAS: (a) would have full responsibility for the profits and losses (P&L) of RM, including R&D, manufacturing, supply, sales, and marketing; (b) would be a corporate officer answerable only to the CEO; (c) would be a member of SHIRE's Executive Leadership Team; and (d) would receive a compensation increase at the next annual review in February 2013.  RUSSELL further represented that JONAS would receive a relocation allowance for the move from his home in Philadelphia to San Diego, which move was required by the promotion.

15.   RUSSELL also represented to JONAS that his creativity and leadership in particular, as well as other skills JONAS had, were needed to help build the RM business beyond the initial product Dermagraft, which was acquired following SHIRE's acquisition of a company called Advanced Biohealing, Inc. (ABH) in 2011.  JONAS felt he was well-suited to apply his skill set, particularly

-4-

1    his creativity, to the RM division and was reassured by RUSSELL's

2    representations to that effect.  At no time when the offer was made did RUSSELL

3    tell JONAS that he, RUSSELL, was going to be replaced as CEO and that an

4    announcement regarding that fact was forthcoming in a matter of days.

5        16.    RUSSELL and other senior management at SHIRE did not tell

6    JONAS about the depth and breadth of the existing problems with the RM business

7    in the wake of the ABH acquisition.  For example, they failed to tell him the

8    particulars of an ongoing investigation by the United States Department of Justice

9    (the "Justice Department" or "DOJ") into the RM business, and it was only later

10   that JONAS learned that the Justice Department was seeking penalties of

11   approximately $1.5 billion in connection with that investigation.  SHIRE and

12   RUSSELL also did not advise JONAS of the details of the illegal conduct

13   allegedly engaged in by ABH's sales and marketing group before and after the

14   acquisition, or that several employees in that group had left the company after the

15   investigation commenced.  Neither did they tell him that sales projections for the

16   RM business were overinflated because they were based on prior illegal conduct

17   by ABH sales personnel, many of whom had also left.  Finally, they did not tell

18   him that there were product approval process issues and ethical issues associated

19   with prior efforts to obtain government approvals to sell key RM products.

20       17.    Based on those representations and omissions by RUSSELL and other

21   senior leaders at SHIRE, JONAS indicated that he would accept the offer.

22       18.    Shortly thereafter, JONAS learned that RUSSELL was to be replaced

23   as SHIRE's CEO by ORNSKOV.  Concerned about the potential effect on his new

24   position and on the RM division generally, JONAS reached out to SHIRE senior

25   management to explore the implications of the company's appointment of a new

26   CEO and to determine if the offer from SHIRE was still as promising as

27   RUSSELL and others had previously represented.

28

COMPLAINT FOR FRAUD AND DISCRIMINATION

706653455

19.    The day after he learned that SHIRE would have a new CEO, JONAS again met with RUSSELL via videoconference.  RUSSELL assured JONAS that the leadership change would not affect his position as RM President or diminish any of RUSSELL's prior representations and assured JONAS that the Board fully supported growth of the RM business.  RUSSELL again encouraged JONAS to take the position of President of RM, rather than take an offer from any other interested company, stating again that the position was right for both JONAS and SHIRE.  RUSSELL reiterated that the RM business urgently needed JONAS' creativity and leadership skills.  Other senior managers at SHIRE made similar representations, and ORNSKOV represented that he would ensure that JONAS' relocation expenses were fully reimbursed.  Based on those representations, JONAS again decided to accept the offer and to turn away from other offers and interest.

20.    In mid-November 2012, in reliance on these and other representations, JONAS entered into an Executive Employment Agreement (the "Employment Agreement") with SHIRE to become the President of RM, rather than accept offers for similar employment from other companies, which had shown interest in JONAS.

21.    In reliance on these and other representations, JONAS listed his Philadelphia home for sale in a down housing market and purchased a home in San Diego along with new furniture and other items necessary to establish himself in California.  Thereafter, JONAS moved from his home in Philadelphia to his newly-purchased home in San Diego to assume the position of President of RM.  JONAS would not have accepted the RM presidency, signed the Employment Agreement, listed his Philadelphia home for sale, purchased a new home and accessories or moved to San Diego had he not received the previously discussed representations and assurances from SHIRE's senior management beforehand.

-6-

1        22.    After assuming the presidency of RM, JONAS learned that there were

2    serious problems within the RM business, many of which were the subject of the

3    wide-ranging investigation by the Justice Department, related in particular to

4    illegal sales and marketing practices of SHIRE following its acquisition of ABH.

5    SHIRE's senior management had known the nature and extent of these problems,

6    but they had failed to disclose them to JONAS when he was offered the Presidency

7    of the RM business, telling JONAS instead only that his creativity and leadership

8    were needed to build the RM division.  As a number of significant employees left

9    the RM business in the course of the DOJ investigation, it became clear to JONAS

10   that he had been promoted to be President of RM to put a good face on a messy,

11   problematic situation in the RM business, rather than to use his skills to build the

12   division, as senior management had previously represented.

13       23.    JONAS' suspicions were heightened when the new CEO,

14   ORNSKOV, began to take control of the SHIRE organization in early 2013 and to

15   block any efforts by JONAS to exercise his leadership and creativity.  ORNSKOV

16   in particular stated that SHIRE needed to make way for younger people to be given

17   the opportunity to fill senior management positions.  As a result, numerous senior

18   managers over the age of 40 left the company.  Other over-40 managers seeking

19   promotion were told they did not "have enough runway" to be promoted within the

20   company.  JONAS began hearing rumors that he was being replaced and/or having

21   his role in the company diminished as a result of this discriminatory attitude.

22       24.    By late April 2013, a mere five months after its prior representations

23   and assurances, SHIRE had: (a) stripped JONAS of responsibility for

24   manufacturing, research and development, and thus for full P&L responsibility for

25   the RM business; (b) removed JONAS from the position of President of the RM

26   business; (c) removed JONAS from the Executive Leadership Team; (d)

27   specifically instructed JONAS not to use his creativity in his work for RM, *i.e.*, not

28   to focus on science, compliance or business development, but to focus only on

-7-

1  sales; (e) refused to give JONAS a salary increase, as previously promised; and (f)
2  refused to fully reimburse JONAS for his relocation expenses, as promised.  Each
3  of the actions was taken without first consulting or informing JONAS.

4       25.   The effect of these acts was to reduce JONAS' duties and
5  responsibilities to those of a general manager, which was not only a marked
6  diminution from his promised position as President of the RM business, but a
7  lesser position than his previous position as head of R&D for SHIRE.  At the same
8  time JONAS continued to be saddled with the leadership responsibilities of a
9  company facing serious charges by the Justice Department and significant public
10  scrutiny.  Rather than heading a respectable business unit and serving on SHIRE's
11  Executive Leadership Team, JONAS watched as his good name was sullied, both
12  internally and externally, by association with the problematic business practices
13  that plagued SHIRE's RM business.  All of this was accompanied by insinuations
14  that he was too old for the job.

15       26.   When JONAS learned of these actions by DEFENDANTS, he raised
16  his concerns about misrepresentations, discrimination and mistreatment with
17  SHIRE's leadership.  In response, he was summarily placed on administrative
18  leave.  He was told that he had engaged in disruptive behavior that was harmful to
19  the company.  Other derogatory and baseless reasons for his being placed on
20  administrative leave were published by SHIRE as well.  For example, after putting
21  JONAS on administrative leave, ORNSKOV announced in a published interview:
22  "I have started opening all the windows, shaking the bed sheets, and throwing
23  away some of the things we don't need. …I cut away two layers when I came to
24  Shire….I don't believe in the notion of having a fancy management up here,' he
25  says pointing to the ceiling."  The situation was and continues to be humiliating,
26  demoralizing and intolerable

27       27.   At the same time SHIRE was publishing baseless and derogatory
28  commentary about JONAS, PharmaVOICE magazine, a leading pharmaceutical

industry publication, named JONAS one of the 100 Most Inspiring People in the Life-Sciences Industry for 2013. This is an honor conferred by the readers of the publication on executives in the life sciences industry who have demonstrated influence as corporate leaders and have positively impacted the industry. The contrasting negative commentary about JONAS by ORNSKOV alleged above reaffirms that the conduct of Defendants was willful, malicious and oppressive.

28. As a result of SHIRE's misrepresentations, concealment and willful discrimination, JONAS has suffered and will continue to suffer serious and irreparable harm, including, but not limited to: (a) lost compensation and unreimbursed moving expenses; (b) loss of the position and responsibilities promised by SHIRE's senior management; (c) lost employment opportunities; (d) real estate losses; (e) psychological and emotional harm; and (f) reputational harm.

**FIRST CLAIM FOR RELIEF:**

**FRAUD AND DECEIT AGAINST ALL DEFENDANTS**

29. JONAS hereby restates the allegations set forth in paragraphs 1 through 27 and incorporates those allegations in this paragraph as if fully set forth herein.

30. SHIRE and RUSSELL made false representations and material omissions of material fact to JONAS regarding his promised position as the President of RM, regarding his membership on the Executive Leadership Team, regarding his responsibilities as President of RM, regarding the status of the RM business, and regarding a salary increase. SHIRE and RUSSELL reiterated those false representations and material omissions when JONAS questioned whether he should take the position offered, after it was announced that a new CEO, ORNSKOV, would replace RUSSELL. ORNSKOV was aware of those misrepresentations, and willfully concealed material information, but he nevertheless refused to followed through on prior representations made by SHIRE and RUSSELL to JONAS, which were known to him, and he refused to correct

1   omissions made by RUSSELL, which were also known to him. ORNSKOV also
2   refused to honor his promise to ensure that JONAS' relocation expenses were fully
3   reimbursed.

4      31.   DEFENDANTS knew that all of those representations were false at
5   the time of their making and that the omissions were material. DEFENDANTS
6   made all of those false representations and omitted all of that material information
7   with the intent to induce JONAS to accept a new position and to move from
8   Philadelphia to San Diego on the basis of the false representations and omissions.

9      32.   JONAS reasonably and justifiably relied on DEFENDANTS' false
10  representations and omissions in accepting the new position and responsibilities
11  and moving to San Diego and in declining other opportunities available to him.
12  JONAS suffered damage and harm as a result of DEFENDANTS'
13  misrepresentations and omissions in an amount to be proven at trial.

14                    **SECOND CLAIM FOR RELIEF:**

15     **FRAUDULENT CONCEALMENT AGAINST ALL DEFENDANTS**

16     33.   JONAS hereby restates the allegations set forth in paragraphs 1
17  through 31 and incorporates those allegations in this paragraph as if fully set forth
18  herein.

19     34.   DEFENDANTS intentionally concealed from JONAS material facts,
20  of which DEFENDANTS had exclusively knowledge, regarding his promised
21  position as the President of RM, regarding his membership on the Executive
22  Leadership Team, regarding his responsibilities as President of RM, regarding the
23  status of the RM business, and regarding an increase in his salary. DEFENDANTS
24  continued that concealment regarding JONAS' promised position as the President
25  of RM, regarding his membership on the Executive Leadership Team, regarding
26  his responsibilities as President of RM, regarding the status of the RM business,
27  and regarding the promised increase in his salary when JONAS questioned whether
28  he should take the position offered, after it was announced that a new CEO,

-10-

1   ORNSKOV, would replace RUSSELL.

2      35.   DEFENDANTS concealed and suppressed these material facts
3   regarding JONAS' promised position as the President of RM, regarding his
4   membership on the Executive Leadership Team, regarding his responsibilities as
5   President of RM, regarding the status of the RM business, and regarding the
6   promised increase in his salary, with the intent to induce JONAS to accept the new
7   positions and responsibilities and to move from Philadelphia to San Diego on that
8   basis and to decline other opportunities.

9      36.   JONAS was unaware of the concealed and suppressed facts and relied
10  on them to his detriment.  JONAS would not have accepted the new position
11  and/or moved to San Diego and/or declined other opportunities had he known of
12  these facts.  JONAS suffered damage and harm as a result of DEFENDANTS'
13  concealment in an amount to be proven at trial.

14              **THIRD CLAIM FOR RELIEF:**

15      **FRAUDULENT INDUCEMENT AGAINST ALL DEFENDANTS**

16      37.   JONAS hereby restates the allegations set forth in paragraphs 1
17  through 35 and incorporates those allegations in this paragraph as if fully set forth
18  herein.

19      38.   SHIRE and RUSSELL misrepresented and concealed material facts
20  regarding JONAS'S promised position as the President of RM, regarding his
21  membership on the Executive Leadership Team, regarding his responsibilities as
22  President of RM, regarding the status of the RM business, and regarding the
23  promised increase in his salary during the process of hiring JONAS as President of
24  RM.  SHIRE and RUSSELL repeated those false representations and omissions
25  when JONAS questioned whether he should take the position offered, after it was
26  announced that a new CEO, ORNSKOV, would replace RUSSELL.  ORNSKOV
27  was aware of those misrepresentations, and willfully concealed material
28  information, but he nevertheless refused to follow through on prior representations

-11-

1   made by SHIRE and RUSSELL to JONAS, which were known to him, and he
2   refused to correct omissions made by RUSSELL, which were also known to him.
3   ORNSKOV also refused to honor his promise to ensure that JONAS' relocation
4   expenses were fully reimbursed.

5   39.   DEFENDANTS knew these misrepresentations to be false or lacked
6   reasonable grounds to believe them to be true and knew the omissions were
7   material.  DEFENDANTS made those false representations and concealed those
8   material facts with the intent to induce JONAS to accept a new position (including
9   execution of the Employment Agreement) and responsibilities and to move from
10  Philadelphia to San Diego and to decline other employment opportunities.

11  40.   JONAS reasonably and justifiably relied on DEFENDANTS' false
12  representations and concealment regarding his promised position as the President
13  of RM, regarding his membership on the Executive Leadership Team, regarding
14  his responsibilities as President of RM, regarding the status of the RM business,
15  and regarding the promised increase in his salary in accepting the new position and
16  moving to San Diego and in declining other employment opportunities.

17  41.   JONAS suffered damage and harm as a result of DEFENDANTS'
18  misrepresentations and concealment in an amount to be proven at trial.

19  **FOURTH CLAIM FOR RELIEF:**
20  **NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS**

21  42.   JONAS hereby restates the allegations set forth in paragraphs 1
22  through 40 and incorporates those allegations in this paragraph as if fully set forth
23  herein.

24  43.   SHIRE and RUSSELL misrepresented and omitted material facts to
25  JONAS regarding his promised position as the President of RM, regarding his
26  membership on the Executive Leadership Team, regarding his responsibilities as
27  President of RM, regarding the status of the RM business, and regarding an
28  increase in his salary.  SHIRE and RUSSELL repeated those false representations

-12-

1   and omissions regarding JONAS' promised position as the President of RM,
2   regarding his membership on the Executive Leadership Team, regarding his
3   responsibilities as President of RM, regarding the status of the RM business, and
4   regarding the promised increase in his salary when JONAS questioned whether he
5   should take the position offered, after it was announced that a new CEO,
6   ORNSKOV, would replace RUSSELL.   ORNSKOV was aware of those
7   misrepresentations, and willfully concealed material information, but he
8   nevertheless refused to follow through on prior representations made by SHIRE
9   and RUSSELL to JONAS, which were known to him, and he refused to correct
10  omissions made by RUSSELL, which were also known to him.  ORNSKOV also
11  refused to honor his promise to ensure that JONAS' relocation expenses were fully
12  reimbursed.

13      44.    DEFENDANTS lacked reasonable grounds to believe such
14  representations regarding JONAS' promised position as the President of RM,
15  regarding his membership on the Executive Leadership Team, regarding his
16  responsibilities as President of RM, regarding the status of the RM business, and
17  regarding the promised increase in his salary to be true.  DEFENDANTS also
18  lacked reasonable grounds to believe that the omissions regarding such subjects
19  were immaterial.

20      45.    DEFENDANTS made such representations and omissions regarding
21  JONAS' promised position as the President of RM, regarding his membership on
22  the Executive Leadership Team, regarding his responsibilities as President of RM,
23  regarding the status of the RM business, and regarding the promised increase in his
24  salary with the intent to induce JONAS to accept a new position and to move from
25  Philadelphia to San Diego on the basis of the false representations and to decline
26  other employment opportunities.

27      46.    JONAS reasonably and justifiably relied on DEFENDANTS'
28  representations and omissions in accepting the new position and moving to San

-13-

COMPLAINT FOR FRAUD AND DISCRIMINATION

Diego and declining other employment opportunities.

47.     JONAS suffered damage and harm as a result of SHIRE's representations in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF:

## AGE DISCRIMINATION (29 U.S.C. § 621 *et seq.* and CALIFORNIA GOVERNMENT CODE § 12900, *et seq.*) AGAINST SHIRE

48.     JONAS hereby restates the allegations set forth in paragraphs 1 through 46 and incorporates those allegations in this paragraph as if fully set forth herein.

49.     JONAS performed his duties in all positions he held with SHIRE in an exemplary and competent manner.

50.     Because of JONAS' age, less than five months after promising him a position as President of the RM business, membership on the Executive Leadership Team, executive responsibility for P&L of the RM business and a salary increase, SHIRE demoted him from his position as President of SHIRE's RM business, removed him from the Executive Leadership Team, curtailed his responsibilities for RM's P&L and refused to increase his salary.

51.     These adverse actions were not based on poor performance, nor were they ever contended to be so, but were instead orchestrated by SHIRE and its new CEO, ORNSKOV, and his management team.  ORNSKOV and his team had repeatedly expressed a desire to make way for younger people to fill senior management positions and had told other over-40 managers that they did not "have enough runway" to be promoted in the company.  When JONAS raised concerns regarding the adverse acts undertaken with respect to him and the ageist statements made, he was placed on administrative leave, and derogatory and baseless statements about the reasons for his leave were made by SHIRE to other employees, causing him shame, embarrassment and humiliation.

52.     SHIRE's actions were willful, intentional, malicious, and oppressive,

-14-

1    and they have created an intolerable working condition, such that JONAS

2    reasonably feels compelled to resign.

3        53.    SHIRE's actions described in this complaint violated the federal and

4    state age discrimination statutes, 28 U.S.C. § 621, *et seq.* and California

5    Government Code § 12900 *et seq.*

6        54.    But for SHIRE's age-biased adverse actions, JONAS would have

7    enjoyed the full rights and responsibilities of his employment, as promised by

8    SHIRE.    JONAS has suffered damage and harm as a result of SHIRE's

9    discrimination in an amount to be proven at trial.

10                              **SIXTH CLAIM FOR RELIEF:**

11           **WRONGFUL CONSTRUCTIVE DISCHARGE AGAINST SHIRE**

12        55.    JONAS hereby restates the allegations set forth in paragraphs 1

13    through 53 and incorporates those allegations in this paragraph as if fully set forth

14    herein.

15        56.    JONAS performed all jobs he held with SHIRE in an exemplary and

16    competent manner.

17        57.    DEFENDANTS' fraudulent and discriminatory actions described

18    above were willful and deliberate and were undertaken in a callous and insensitive

19    way.  Indeed, the fact that JONAS was stripped of all positions and entitlements

20    that were previously promised to him in November 2012 a mere five months later,

21    in April 2013, confirms the egregiousness of DEFENDANTS' conduct.  Moreover,

22    none of the acts undertaken by DEFENDANTS were based on poor performance

23    by JONAS.  They were based instead on fraudulent and discriminatory acts, as

24    described above.

25        58.    While these acts were being engineered by DEFENDANTS,

26    numerous other SHIRE employees were informed of the plans to demote, remove

27    and relieve JONAS of his positions and entitlements, but JONAS was deliberately

28    excluded from those discussions, and that information was deliberately kept from

706653455

him.  Instead, he first began to learn of the adverse acts being taken against him by rumor and by sudden changes in his duties and responsibilities and/or sudden structural changes in the company made without warning.   While JONAS' responsibilities were stripped without warning or explanation, those changes were announced for others to see, subjecting JONAS to shame, embarrassment and humiliation.  This created an intolerable working environment.

59.   JONAS complained to senior management about the adverse acts set forth in this complaint.  Management's response was to immediately place him on administrative leave and to claim that he was being "disruptive and harmful to the business."   After he was placed on leave, other SHIRE employees were told derogatory things about his administrative leave by SHIRE or were told nothing at all, further subjecting JONAS to shame, embarrassment and humiliation, and further creating an intolerable working environment.

60.   SHIRE's actions were willful, intentional, malicious, oppressive, and intolerable, such that JONAS reasonably feels compelled to resign.  This conduct by SHIRE constitutes wrongful constructive discharge and violates California law.

61.   But for SHIRE's activities, JONAS would have enjoyed the full rights and responsibilities of his employment, as promised by SHIRE.   JONAS has suffered damage and harm as a result of SHIRE's discrimination in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF:

## VIOLATION OF CAL. LABOR CODE § 970 *et seq.* AGAINST ALL DEFENDANTS

62.   JONAS hereby restates the allegations set forth in paragraphs 1 through 60 and incorporates those allegations in this paragraph as if fully set forth herein.

63.   DEFENDANTS made knowingly false representations and omissions regarding the kind, character, and extent of JONAS' work as President of RM, as a

-16-

1   member of the Executive Leadership Team, the length of time such work would
2   last, and the compensation for such work, among other things.

3       64.    DEFENDANTS made such representations and omissions with the
4   intent to influence, persuade, and engage JONAS to move from Philadelphia to
5   San Diego, CA, yet such representations and omissions were false. Accordingly,
6   SHIRE has violated California Labor Code § 970 *et seq.*.

7       65.    JONAS suffered damage and harm as a result of DEFENDANTS'
8   misrepresentations in an amount to be proven at trial.

9   **EIGHTH CLAIM FOR RELIEF:**

10  **PUNITIVE DAMAGES AGAINST ALL DEFENDANTS**

11      66.    JONAS hereby restates the allegations set forth in paragraphs 1
12  through 64 and incorporates those allegations in this paragraph as if fully set forth
13  herein.

14      67.    DEFENDANTS' conduct alleged herein was willful and wanton and
15  was fraudulent, malicious and oppressive, entitling JONAS to recover punitive
16  damages against DEFENDANTS under California Civil Code § 3294 *et seq.*

17  **PRAYER FOR RELIEF**

18  **WHEREFORE**, JONAS prays for the following relief:

19      a.    A declaratory judgment that the Employment Agreement was induced
20          by fraud and is therefore voidable at the option of JONAS;

21      b.    A preliminary and permanent injunction restraining and enjoining
22          SHIRE's intolerable and discriminatory activities, as described herein
23          and to be developed at trial;

24      c.    Compensatory and punitive damages in an amount to be proven at
25          trial;

26      d.    Attorneys' fees and costs;

27      e.    All damages, penalties, attorneys' fees, and costs available under the
28          ADEA, including but not limited to liquidated damages;

-17-

706653455

1    f.    All damages, penalties, attorneys' fees, and costs available under the

2          California Fair Employment and Housing Act;

3    g.    All damages, penalties, attorneys' fees, and costs available under

4          Labor Code section 970 *et seq.*, including but not limited to, a civil

5          penalty of double damages; and

6    h.    Such other relief as the Court deems just and proper.

7          JONAS hereby demands a jury trial on all causes of action and issues

8    contained herein.

9

10   Dated: May 31, 2013                      MAYER BROWN LLP
                                              JOHN P. ZAIMES
11                                            EVAN M. WOOTEN

12

13                                            By:    s/Evan M. Wooten
                                              Attorneys for Plaintiff

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-18-

706653455